UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------- x
                                            :
MELANIE V. TORRES                           :          3:13 CV 1914 (JGM)
                                            :
V.                                          :
                                            :
CAROLYN W. COLVIN                           :
ACTING COMMISSIONER OF SOCIAL               :
SECURITY                                    :          DATE: DECEMBER 2, 2015
                                            :
------------------------------------------------- x
```

RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER, AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, seeks review of a final decision by the Commissioner of Social Security ["SSA"] denying plaintiff Disability Insurance Benefits ["DIB"].

I.  ADMINISTRATIVE PROCEEDINGS

On November 16, 2009, plaintiff, Melanie Torres, filed an application for DIB claiming that she has been disabled since April 20, 2000 (Certified Transcript of Administrative Proceedings, dated February 11, 2014 ["Tr."] 179-87) due to fibromyalgia, lupus, Sjogren's syndrome, and migraines. (Tr. 98).[1] Plaintiff's application was denied initially (Tr. 98-101), and upon reconsideration. (Tr. 105-08). On April 26, 2010, plaintiff filed a request for a hearing by an Administrative Law Judge ["ALJ"](Tr. 109-10), and on February 3, 2011, a hearing was held before ALJ Kim Griswold at which plaintiff testified in person and vocational expert ["VE"] Richard Hall testified telephonically. (Tr. 34-74).

---

[1]Plaintiff's Date Last Insured is December 31, 2001, so that any analysis of her disability will focus on plaintiff's condition between April 20, 2000, her alleged onset date, and December 31, 2001. (See Tr. 1003, 1039). Plaintiff did not file a claim for Supplemental Security Income benefits. (Dkt. #12, Brief at 2).

On February 25, 2011, the ALJ issued an unfavorable decision denying plaintiff's application. (Tr. 16-28). On March 11, 2011, plaintiff requested a review of the ALJ's decision (Tr. 6-7) which the Decision Review Board granted. (Tr. 13-15). On May 27, 2011, the Decision Review Board affirmed the ALJ's denial of benefits, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

On June 30, 2011, plaintiff filed a complaint in this Court, and on March 2, 2012, the case was voluntarily remanded for further administrative proceedings. See Torres v. Astrue, No. 3:11 CV 1056 (JCH), Dkts. ##27-29; (see also Tr. 1107-12). Thereafter, the Appeals Council remanded the matter to ALJ Griswold (Tr. 1114-18) with instructions to determine whether plaintiff's fibromyalgia constituted a severe impairment by evaluating all of the medical evidence of record, by obtaining testimony from a medical expert regarding the fibromyalgia claim, by obtaining additional evidence concerning plaintiff's impairments, by giving further consideration to plaintiff's maximum residual functional capacity and providing rationale in support of assessed limitations, by further evaluating plaintiff's subjective complaints, and by obtaining supplemental evidence from a VE to clarify the effect of the assessed limitations on plaintiff's occupational base. (Tr. 1117-18).

On June 20, 2013, ALJ Griswold held a second hearing at which plaintiff and VE Hank Lerner testified. (Tr. 1030-80). During this hearing, plaintiff objected to Dr. John A. Pella, a medical expert, testifying by telephone and after a discussion with plaintiff, the ALJ chose to dismiss Dr. Pella without taking his testimony. (Tr. 1033-37).[2] On September 27, 2013, the ALJ issued a second decision denying plaintiff's claim. (Tr. 998-1021).

---

[2]See Section III.A infra.

On December 26, 2013, plaintiff filed her Complaint in this pending action (Dkt. #1), and on March 7, 2013, defendant filed her Answer. (Dkt. #8).[3] On July 21, 2014, plaintiff filed her Motion to Reverse the Decision of the Commissioner and brief in support (Dkt. #12), which was followed by defendant's Motion to Affirm the Commissioner and brief in support on November 6, 2014. (Dkt. #18).

For the reasons stated below, plaintiff's Motion for Order Reversing the Decision of the Commissioner (Dkt. #12) is **granted in part**, and defendant's Motion to Affirm the Decision of the Commissioner (Dkt. #18) is **denied**.

## II. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry.   First, the court must decide whether the Commissioner applied the correct legal principles in making the determination.   Second, the court must decide whether the determination is supported by substantial evidence.   See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citation omitted); see Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998)(citation omitted). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.   See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998)(citation omitted); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)(citations omitted). However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.   See Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993)(citation omitted).

---

[3]Attached to defendant's Answer is the 1,591 page certified administrative transcript, dated February 11, 2014.

Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. See id. Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise.  See 42 U.S.C. § 405(g); see also Beauvoir v. Charter, 104 F.3d 1432, 1433 (2d Cir. 1997)(citation omitted).

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.  See 42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process. See 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently working. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is currently employed, the claim is denied. Id. If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"]. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Balsamo, 142 F.3d at 79-80. If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); see also Balsamo, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed

4

impairments, as a fourth step, she will have to show that she cannot perform her former work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant shows she cannot perform her former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. See Balsamo, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if she shows she cannot perform her former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see also Balsamo, 142 F.3d at 80 (citations omitted).

## III. DISCUSSION

Following this five-step process, ALJ Griswold concluded that plaintiff was not disabled from April 20, 2000, her alleged onset date, through December 31, 2001, her date last insured. (Tr. 1021). She began by finding that plaintiff had not engaged in substantial gainful employment during the relevant time period (Tr. 1004-05, citing 20 C.F.R. § 404.1571 et seq.) and that through her date last insured, plaintiff suffered from the severe impairments of obesity, fibromyalgia, and cervicalgia. (Tr. 1005-07, citing 20 C.F.R. § 404.1520(c)). Next, ALJ Griswold concluded that plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I for the period of time in question. (Tr. 1007-09, citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). In addition, the ALJ found that prior to the date last insured, plaintiff had the Residual Functional Capacity ["RFC"] to perform light work except that she could occasionally reach overhead bilaterally, frequently reach in all other directions, push and pull with her bilateral extremities, perform continuous handling and fingering with bilateral upper extremities, stand up to two hours, walk up to two hours,

5

and sit up to six hours in an eight-hour workday, frequently operate foot controls, occasionally stoop, balance, and climb ramps and stairs, could not crouch, crawl, kneel, or climb ladders, ropes, or scaffolds, could not tolerate exposure to extreme cold and unprotected heights, could tolerate occasional exposure to dust, fumes, odors, gases and poor ventilation, could tolerate frequent exposure to extreme heat, vibration, moving mechanical parts, humidity, and wetness, could frequently operate a motor vehicle, and could understand, remember, and carry out simple instructions throughout an ordinary workday and workweek with normal breaks on a sustained basis. (Tr. 1009-19). ALJ Griswold then concluded that plaintiff could not perform any past relevant work, but that through December 31, 2001, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (Tr. 1020, citing 20 C.F.R. §§ 404.1565, 404.1569, 404.1569(a)).

Plaintiff seeks an order reversing or remanding the decision of the Commissioner on the grounds that the ALJ erred with respect to Dr. Pella (Dkt. #12, at 16-17), that the ALJ failed to follow the treating source rule (id. at 18-22), that the ALJ did not properly assess plaintiff's credibility (id. at 22-27), and that the ALJ's vocational analysis is unsupported (id. at 27-32). Defendant counters that any error related to Dr. Pella's testimony was harmless and is not a cause for remand (Dkt. #18, Brief at 5-8), that the ALJ's physical RFC determination is supported by substantial evidence and legally correct (id. at 8-11), that the ALJ's decision comports with the treating source rule (id. at 11-15), that the ALJ's determination as to plaintiff's credibility is not patently unreasonable and therefore should be upheld (id. at 15-20), and that the ALJ's step five determination is supported by substantial evidence (id. at 20-23).

A. DR. PELLA'S TESTIMONY

On April 6, 2012, plaintiff's claim was voluntarily remanded with instructions for the ALJ to "[d]etermine whether fibromyalgia constitutes a severe impairment and in so doing, evaluate all of the medical evidence of record . . . . Testimony from a medical expert will be obtained to assist in reviewing this evidence, and any additional evidence related to fibromyalgia and in determining whether fibromyalgia constitutes a severe impairment." (Tr. 1117). Thereafter, on March 6, 2013, a medical expert, Dr. John A. Pella, completed written interrogatories and a Medical Source Statement analyzing plaintiff's fibromyalgia. (Tr. 1318-26). Plaintiff claims that these documents were never provided to her or her counsel. (Dkt #12, at 2). On March 19, 2013, Dr. Pella received a request to "appear and give testimony as a medical expert" at plaintiff's June 20, 2013 hearing. (Tr. 1197-98). Dr. Pella received a second, nearly identical, request on April 10, 2013. (Tr. 1216-17, 1226-27, 1231-32).

As previously indicated, during the June 20, 2013 hearing, plaintiff's counsel objected to Dr. Pella testifying by telephone. (See Tr. 1033-37). At the hearing, plaintiff's counsel also objected to the admission of Dr. Pella's interrogatories and Medical Source Statement. (Tr. 1033). The ALJ overruled this objection because "the interrogatories are based on [Dr. Pella's] review of the record, and the witness is present, and so we may, therefore, have any questions for him, should [plaintiff] have any questions regarding the content of his opinion." (Tr. 1034). Plaintiff's counsel then informed the ALJ that he had believed that Dr. Pella would be at the hearing in person and had not received notice that he would be testifying telephonically. (Id.). The ALJ acknowledged that notice of the telephonic testimony had not been sent and offered plaintiff the choice of waiving the

7

notice requirement and questioning Dr. Pella telephonically or taking no testimony from Dr. Pella and relying solely on the interrogatories and Medical Source Statement. (Tr. 1034-36). After plaintiff refused to waive her objection, the ALJ chose not to take Dr. Pella's testimony and to instead consider his written testimony contained in the interrogatories and Medical Source Statement, explaining that "I don't feel I need the medical expert testimony. I feel I have enough information in the record as it is to make a fair and accurate decision." (Tr. 1036-37).

Plaintiff claims that the ALJ erred at this June 20, 2013 hearing by not providing plaintiff with notice that Dr. Pella would be testifying telephonically (Dkt. #12, at 16) and, after being informed of this lack of notice, by offering plaintiff the choice to either waive her right to notice or to take no telephonic testimony from Dr. Pella, thereby depriving plaintiff of her opportunity to question him. (Id. at 16-17). Both the ALJ, at the hearing, and defendant, in her brief, have acknowledged that the ALJ violated the regulations by not informing plaintiff in advance that Dr. Pella would be testifying telephonically. (Tr. 1034, 1037; Dkt. #18, Brief at 6). However, defendant contends that this error did not prejudice plaintiff and does not warrant remand. (Dkt. #18, Brief at 6-8).

To support her position, plaintiff relies on the decisions and reasoning in Edwards v. Astrue, No. 3:10 CV 1017 (MRK), 2011 WL 3490024 (D. Conn. Aug. 10, 2011) and Koutrakos v. Astrue, 906 F. Supp. 2d 30 (D. Conn. 2012). In Edwards, the late U.S. District Judge Mark R. Kravitz determined that the ALJ had committed legal error because of the "lack of notice of the telephonic testimony and [the ALJ's] possible reliance on the medical expert's improper telephonic testimony[,]" and, after determining that this error had been prejudicial, ordered a remand of the case. 2011 WL 3490024, at *5. In his

8

analysis, Judge Kravitz explained that, under the then-current regulations, "ALJs must provide claimants with notice that a witness will be testifying telephonically, and absent a new rule, medical experts should not be allowed to testify telephonically over a claimant's timely objection." Id. at *8. In Koutrakos, Senior U.S. District Judge Charles S. Haight, Jr. approved this Magistrate Judge's Recommended Ruling that expanded the Edwards decision to include the testimony of vocational experts as well as medical experts. 906 F. Supp. 2d at 42. Subsequent to these decisions, some other courts have found that it is reversible error for an ALJ to allow an expert to testify telephonically without providing a plaintiff notice and despite her objections. See Cuevas v. Colvin, No. 3:14-CV-18 (MAD), 2015 WL 5306109, at *6-8 (N.D.N.Y. Sept. 30, 2015)("Where . . . the medical advisor testified by telephone but partially relied upon plaintiff's physical appearance at the hearing as a basis for an opinion, . . . the error is reversible[,]" and not harmless); Hannah v. Colvin, No. 8:13-cv-1082-T-24 TBM, 2014 WL 2861487 (M.D. Fla. June 24, 2014); Brown v. Comm'r of Soc. Sec., No. 6:12CV804, 2014 WL 1233126, at *7-9 (E.D. Tex. March 24, 2014)(finding that plaintiff was prejudiced by the lack of notice because it deprived her of the ability to object before the hearing took place); Decker v. Comm'r of Soc. Sec., No. 2:21-CV-0454, 2013 WL 1363752, at *4-11 (S.D. Ohio Apr. 3, 2013)("treating the procedural irregularity [of having the vocational expert testify by telephone],if not waived, as presumptively prejudicial, but carving out a small number of cases where remand would not serve any useful purpose."), Magistrate Judge's Recommended Ruling approved over defendant's objection, 2013 WL 4830961 (S.D. Ohio Sept. 10, 2013).  But see Khan v. Comm'r of Soc. Sec., No. 14-CV-4260 (MKB), 2015 WL 5774828, at *19 (E.D.N.Y. Sept. 30, 2015)(finding harmless error from vocational expert's

telephonic testimony where plaintiff's counsel "vigorously cross-examined the expert," but case remanded on other grounds); <u>Cooley v. Colvin</u>, No. 1:14-1158-RMG, 2015 WL 1518096, at *17-20 (D.S.C. March 31, 2015)(agreeing with the logic of <u>Edwards</u>, but finding there to be no prejudice from a failure to send notice when, prior to the hearing, plaintiff was aware that the witness would be testifying telephonically and had time to prepare accordingly); <u>Green v. Astrue</u>, No. 11-11711-PBS, 2013 WL 636962, at *10-11 (D. Mass. Feb. 20, 2013)(finding that a lack of notice that a vocational expert would testify telephonically violated the SSA regulations but was harmless because plaintiff had ample opportunity during the hearing to question the witness and failed to show that he was prejudiced by this telephonic testimony); <u>Tardiff v. Astrue</u>, Civ. No. 11-cv-17-JD, 2012 WL 777484, at *5-7 (D.N.H. March 7, 2012)(remand only required where plaintiff demonstrates "unfairness or prejudice[]" by the medical expert's telephonic testimony).

In response to these decisions, the Social Security Administration revised its rules, specifically citing the <u>Edwards</u> decision as one of its reasons for doing so, to grant ALJs the discretion to allow witnesses to testify telephonically. Rules on Determining Hearing Appearances, 78 Fed. Reg. 29624, 29625 (May 21, 2013). Under these new regulations, ALJs have the authority to determine whether any person, other than the claimant, will testify in person, by video teleconference, or by telephone; however, "[i]f the ALJ determines that any person will appear at the hearing by telephone, the ALJ will notify the claimant and any other party to the hearing in advance of the hearing." <u>Id.</u> If any party objects to a witness appearing by video teleconference or by telephone, "the ALJ will decide how that person will appear." <u>Id.</u>

Prior to the adoption of the new regulations, the SSA undertook the required notice-and-comment rule making procedure; during this procedure, commentators expressed concern that having experts appear by telephone would diminish the ability to adequately question the witness or would otherwise bias the proceedings. Id. In addressing these concerns, the SSA emphasized that claimants are still entitled to question and cross-examine these witnesses, and are still allowed to object to telephonic testimony, which will require an ALJ to use his or her discretion to determine whether to have the witness appear in person. Id. These new regulations, which permit telephone testimony but require that notice of such testimony be sent to the claimant in advance of the hearing, went into effect on June 20, 2013, id. at 29624-25, the same day as plaintiff's hearing. (Tr. 1030).

Therefore, as both parties agree, defendant erred by not providing plaintiff notice that Dr. Pella would be testifying telephonically;[4] however, the question remains whether this error prejudiced plaintiff and is cause to remand the case. Defendant claims that "[s]ince under the new regulations plaintiff has no right to in-person testimony by a witness who is not a party to the case[,]" the case at bar is distinguishable from Edwards and Koutrakos, and plaintiff is not entitled to a remand. (Dkt. #18, Brief at 6-7).

---

[4]At the hearing, the ALJ briefly implied that plaintiff had constructive notice of the telephonic testimony. After plaintiff's counsel explained that he assumed that Dr. Pella would be at the hearing in person, the ALJ replied "You really thought that after all the times you've appeared here, when have we been able to have an in-person medical expert?" (Tr. 1038). Previous cases have found the failure to receive the required notice to be harmless error when a plaintiff still received actual notice of the telephonic testimony and was able to object before the hearing. See Rice v. Astrue, No. 5:09CV00093 JTR, 2010 WL 3417803, at *7, n.7 (E.D. Ark. Aug. 26, 2010); Cooley, 2015 WL 1518096, at *20. However, in this case there is no evidence that plaintiff received any notice that Dr. Pella would be testifying telephonically. Furthermore, it was not unreasonable for plaintiff's counsel to assume that a medical expert based in Rhode Island would appear for a proceeding in Connecticut.

Despite the changes in the regulations, much of the logic in <u>Edwards</u> and <u>Koutrakos</u> applies to the current situation where, under the new regulations, plaintiff was entitled to notice that Dr. Pella would be testifying telephonically but the ALJ also had authority to allow this telephonic testimony over plaintiff's objection.[5] In <u>Edwards</u>, after establishing that it was legal error for the Commissioner not to have sent notice of the telephonic testimony, Judge Kravitz determined that this error prejudiced plaintiff because "[h]ad she been able to object to this form of testimony earlier, the ALJ <u>might</u> have sustained her objection, and the medical expert <u>might</u> have appeared in person or by video conference." 2011 WL 3490024, at *9 (emphasis added). In <u>Koutrakos</u>, as in this case, defendant relied upon the U.S. Supreme Court's decision in <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009), to claim that the failure to send notice was non-prejudicial and did not require remand. 906 F. Supp. 2d at 36; (<u>see</u> Dkt. #18, Brief at 6-7). In his decision, Judge Haight thoroughly analyzed the degree of prejudice that a plaintiff is required to show before a decision will be remanded on account of a legal error. <u>Id.</u> at 35-39. He found the Commissioner's interpretation of <u>Shinseki</u> to be overly simplistic and highlighted the low bar that the U.S. Supreme Court had established in order for a plaintiff to show prejudice from a legal error. <u>Id.</u> at 37-39. Specifically, he held that the U.S. Supreme Court was willing to remand a claim when there was only a possibility, and not a certainty, that if the proper procedure had been followed and the claimant had received the appropriate notice,[6] then a different outcome would have been reached. <u>Id.</u> at 37.

_____

[5]In this analysis, the Court will focus only on the reasoning in these cases that discusses the prejudice which results from a lack of notice that a witness would be testifying telephonically, regardless of whether such telephonic testimony was permitted.

[6]In <u>Shinseki</u>, the Veteran's Administration failed to notify a plaintiff about a medical examination that it had scheduled on her behalf in pursuit of her claim. 556 U.S. at 405.

12

Here, as in <u>Edwards</u>, if plaintiff had received proper notice of this telephonic testimony, she could have objected before the hearing, and "[h]ad she been able to object to this form of testimony earlier, the ALJ <u>might</u> have sustained her objection, and the medical expert <u>might</u> have appeared in person or by video conference." 2011 WL 3490024, at *9 (emphasis added). This raises the possibility, as discussed in <u>Koutrakos</u>, that if the proper procedure had been followed and plaintiff had received notice, that a different outcome would have been reached. <u>See</u> 906 F. Supp. 2d at 37. While defendant correctly notes that the regulations have been changed subsequent to these two decisions so that "the ALJ has plenary discretion to decide how a witness who is not a party to a case shall appear[]" (Dkt. #18, Brief at 7), plaintiff was still deprived of the ability to object to this telephonic testimony before the hearing began. Just as in <u>Edwards</u> and <u>Koutrakos</u>, if plaintiff had been able to object before the hearing, the ALJ may have decided to have Dr. Pella testify either in person or by video teleconference. If nothing else, notice of the telephonic  testimony would have given plaintiff a chance to prepare to question the witness over the telephone rather than in person. <u>See Edwards</u>, 2011 WL 3490024, at *10 (noting that cross-examining a witness in person is different than cross-examining by telephone because with the telephone "the questioner cannot adjust his or her questions based on the appearance and demeanor of the witness[]").

Furthermore, in this case, the prejudice from the lack of notice was amplified by the fact that the remand order required the ALJ to obtain the testimony of a medical expert such as Dr. Pella (Tr. 1117) and that the ALJ relied upon his opinion when determining that plaintiff was not disabled. (<u>See</u> Tr. 1008 ("Based on the opinion of Dr. Pella, which is consistent with the record . . . [the ALJ] finds that through the claimant's

date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled a listed impairment."); <u>see also</u> Tr. 1017 (assigning Dr. Pella's opinion "great weight")). Therefore, the lack of notice about the manner in which this key witness would be testifying was not a harmless error. <u>See Cuevas</u>, 2015 WL 5306109, at *8 ("Where . . . the medical advisor testified by telephone but partially relied upon plaintiff's physical appearance at the hearing as a basis for an opinion, . . . the error is reversible[,]" and not harmless); <u>Hannah</u>, 2014 WL 2861487 at *5 (finding that plaintiff demonstrated prejudice from legal errors, including failure to send proper notice that a witness would be testifying telephonically, when "the VE was [a] key witness on whom the ALJ based his decision"); <u>Brown</u>, 2014 WL 1233126 at *9 ("Because the ALJ[] relied on the telephonic testimony of a medical expert–who did not listen to the [p]laintiff testify–without providing . . . [p]laintiff prior notice, it cannot be said that the ALJ's decision is supported by substantial evidence.")(citations omitted).

Plaintiff was further prejudiced by her inability to cross-examine Dr. Pella about his opinion. At the hearing, the ALJ, after acknowledging the failure to provide plaintiff with notice, explained to plaintiff that "if you would like the benefit of asking questions about the interrogatories and the opinion that we've provided . . . , [then] it's your choice whether or not you would like to waive the telephone notice requirement and question him." (Tr. 1035). Plaintiff refused to waive the notice requirement and the ALJ chose to take no telephonic testimony but to "consider his opinion that is in the record, the interrogatories and the [M]edical [S]ource [S]tatement that he has provided." (Tr. 1036). While the remand order did not specify whether the additional expert testimony should be written or oral, "the general preference of the federal rules . . . is for oral testimony so

14

that there will be an opportunity for live-cross-examination." Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536 (2d Cir. 1972), reh. denied, 1973 WL 19897 (2d Cir. Jan. 16, 1973). Additionally, during the notice-and-comment rule making procedure for the new regulations, the agency emphasized that "[i]f the witnesses appear by telephone, we will continue to provide the claimant and any other party to the hearing the same right to question and cross-examine witnesses[.]" 78 Fed. Reg. 29624, 29625 (May 21, 2013). The ALJ implicitly acknowledged the importance of this cross-examination when she overruled plaintiff's objection to the admission of the interrogatories and Medical Source Statement because they were "based on the review of the record, and the witness is present . . . should you have questions regarding the content of his opinion." (Tr. 1034).[7] Plaintiff never received this chance to cross-examine Dr. Pella.

Defendant argues that plaintiff voluntarily chose not to cross-examine Dr. Pella and therefore any harm that plaintiff suffered from a lack of cross-examination was not caused by defendant. (Dkt. #18, Brief at 7-8). Defendant further insists that since under the new regulations the ALJ could, and did, overrule an objection to a witness appearing via telephone that "[h]ad plaintiff's attorney properly informed himself of the applicable law, he clearly would have cross-examined Dr. Pella via telephone[.]" (Id. at 8) (emphasis in original).

Defendant is correct that the new regulations allow the ALJ to determine that a witness will testify telephonically over the objection of a party, however, this "plenary discretion" does not automatically remove the prejudicial effects of the ALJ failing to provide notice that a witness will be appearing by telephone. As already discussed supra,

---

[7]Neither plaintiff nor the ALJ questioned whether this reasoning was still applicable after Dr. Pella did not testify at the hearing.

receiving notice not only allows plaintiff to object to this testimony in advance, but also to prepare for the possibility of conducting the cross-examination of the witness telephonically instead of in person. Here, plaintiff was offered the choice between forgoing these benefits or forgoing his opportunity to cross-examine the witness. (Tr. 1035). While it is not clear whether plaintiff understood which regulations went in effect the very day of the hearing (see Tr. 1035-36), the Court does not agree with defendant that had he known the current regulations "he clearly would have cross-examined Dr. Pella via telephone[.]" (Dkt. #18, Brief at 8).

Therefore, for the reasons stated above, the ALJ's failure to notify plaintiff that Dr. Pella would be testifying telephonically was prejudicial and the case will be remanded to the ALJ for a rehearing at which plaintiff will receive proper notice of the manner in which any witness will testify and will be given an opportunity to cross-examine any such witness.

B. REMAINING ARGUMENTS

Because the matter is being remanded for a rehearing, it is not necessary for the Court to address plaintiff's remaining arguments. However, upon remand, the ALJ should be sure to consider and apply the treating physician rule, assess plaintiff's credibility, and consider which, if any, occupations plaintiff could perform.

IV. CONCLUSION

For the reasons stated above, plaintiff's Motion to Reverse the Decision of the Commissioner (Dkt. #12) is **granted in part** such that the matter will be remanded for a new hearing, and defendant's Motion to Affirm the Decision of the Commissioner (Dkt. #18) is **denied**.

16

The parties are free to seek the district judge's review of this recommended ruling. See 28 U.S.C. §636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; FED. R. CIV. P. 6(a), 6(e), & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 2nd day of December, 2015 at New Haven, Connecticut.


 /s/ Joan G. Margolis
Joan Glazer Margolis
United States Magistrate Judge